## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**FIVE STAR AUTOMATIC FIRE
PROTECTION, LLC,**

        **Plaintiff,**

    **vs.**                         **Civ. No. 14-622 JCH/GBW**

**NUCLEAR WASTE PARTNERSHIP, LLC
and JERRY GOLDEN,**

        **Defendants.**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Nuclear Waste Partnership, LLC's *Motion for Summary Judgment on Count II*. [Doc. 43]  Plaintiff Five Star Automatic Fire Protection, LLC ("Five Star"), filed a Response [Doc. 48], and Defendant Nuclear Waste Partnership, LLC ("NWP") filed a Reply [51].

Having reviewed the Motion, briefs, evidence, and relevant law, the Court concludes that the Motion should be granted.

### FACTUAL BACKGROUND

NWP's summary judgment motion does not present any evidence or allege any new facts, instead accepting Five Star's factual allegations for purposes of this motion.  The following summary of relevant facts is taken from the factual allegations in the Second Amended Complaint ("SAC"), viewed in the light most favorable to Plaintiff Five Star.  [Doc. 39]

NWP operates the Waste Isolation Pilot Plant ("WIPP"), a facility of the United States Department of Energy, which stores hazardous waste. A fire protection system is absolutely necessary to the safe operation of the site.

Under a subcontract with Constructors, Inc., Five Star was to modify the fire protection system at the WIPP site. The plant could not operate without a continuously operational fire protection system, and Five Star needed to turn off the system while working on it; therefore, Five Star's "window of opportunity" in which to perform the work was critical. Defendants were not formal signatories to the subcontract agreement, and that agreement was silent as to the commencement date; however, Defendants conducted most of the negotiations with Five Star and they had agreed to a commencement date of January 18, 2013. NWP conditioned its acceptance on this date of commencement.

Five Star is a Texas company with its principal place of business in El Paso County. Defendants knew that Luis Palacios, president and sole member of Five Star, would be preoccupied with his daughter's surgery for at least a week, from January 17 on.

On January 17, 2013, a Five Star crew traveled from El Paso to Carlsbad, intending to begin work the next day. But Jerry Golden, an employee of NWP, had given four days off (January 18 to January 21) to the employees responsible for inspecting Five Star's materials, even though Golden knew that this action would prevent the Five Star crew from beginning their work on January 18.

When the Five Star crew arrived at the site on January 18, the security guard at the gate told them that the site was closed and would not let them in. A Constructors, Inc. representative told them that NWP's materials inspectors were on holiday and it was impossible for Five Star to do the work. The Five Star crew had no choice but to return home.

Over the next thirteen days, there were emails discussing what had happened.  NWP and Golden made pretextual and false excuses about Five Star's welding procedures, which they supposedly considered unsafe.  Eventually, on February 1, 2013, Constructors, Inc. and Five Star renegotiated the prior subcontract agreement for $12,600 additional compensation and a new commencement date of February 4, 2013.

On February 4, 2013, a Five Star crew returned to the WIPP site to begin work.  But they were again denied entrance to the site.

## LEGAL STANDARDS

On a motion to dismiss, the court assesses the legal sufficiency of the allegations contained within the four corners of the complaint.  *Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008).  Rule 8 requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The court accepts as true all well-pleaded facts, viewing them in the light most favorable to the plaintiff and allowing all reasonable inferences in favor of the plaintiff.  *Archuleta*, 523 F.3d at 1283; *Atlantic Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000) (motion under Rule 12(c) "is treated as a motion to dismiss under Rule 12(b)(6)" and same standard applies).  This deference is inapplicable to legal conclusions in the complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court "should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable."  *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see Iqbal*, 556 U.S. at 678.  The court does not accept as true a legal conclusion couched as a factual allegation.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The complaint "does not need detailed factual allegations," but the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* The complaint must go beyond "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Conclusory statements unsupported by factual allegations are not sufficient. *Id.*; *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 555 (holding that mere "labels and conclusions" and "formulaic recitation of the elements of a cause of action" are insufficient); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

A motion to dismiss under Rule 12(b)(6) "should be made before filing the answer or in the answer itself." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002); *see* Fed. R. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."). If the motion to dismiss is made after filing the answer, the motion should be treated as a motion for judgment on the pleadings under Rule 12(c). *Jacobsen*, 287 F.3d at 941 n.2. The same standard applies to a Rule 12(b)(6) motion or a Rule 12(c) motion, however. *Id.*; *Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000). The analysis and result is "the same regardless of the finer procedural distinctions." *Borde v. Bd. of Cty. Comm'rs*, 514 Fed. Appx. 795, 799 n.5 (10th Cir. 2013) (unpublished).[1]

Summary judgment under Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could have an effect on the outcome of the suit. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014). A dispute over a

---

[1] The Court cites this and other unpublished opinions for their persuasive value. *See* 10th Cir. R. 32.1(A).

material fact is genuine if the evidence presented could allow a rational jury to find in favor of the non-moving party. *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007). The court cannot weigh the evidence and determine the truth of the matter, but instead determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

A party seeking summary judgment bears the initial burden of showing that there is no genuine dispute as to a material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When that party does not have the burden of persuasion at trial, it can satisfy its burden at the summary judgment stage by identifying a lack of evidence on an essential element of the claim. *Id*. at 671. If the movant satisfies its burden, the burden shifts to the non-movant. *Id*.

The party opposing summary judgment cannot rest on the pleadings, but must go beyond the pleadings and "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The nonmovant must "set forth specific facts" from which a rational trier of fact could find in the non-movant's favor, identifying those facts in the affidavits, deposition transcripts, or incorporated exhibits. *Adler*, 144 F.3d at 671 (internal quotation marks omitted). The party cannot rest on ignorance of the facts, on speculation, or on unsubstantiated conclusory allegations. *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003); *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988). "A fact is 'disputed' in a summary-judgment proceeding only if there is contrary evidence

or other sufficient reason to disbelieve it; a simple denial, much less an assertion of ignorance, does not suffice." *Grynberg v. Total S.A.*, 538 F.3d 1336, 1345 (10th Cir. 2008).

## DISCUSSION

### I. Rule 56 or Rule 12(c)

NWP made its Motion under Rule 56.  Five Star's response argues:  "This is, in effect, a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, dressed up as a motion for summary judgment because 12(c) motions are not favored, and the bar for granting them is fairly high."  [Doc. 48, p. 2]  NWP's Reply observes that Five Star did not argue there was any genuine issue of material fact, and did not attempt to establish a separate factual basis for its prima facie tort claim.  [Doc. 51, p. 1]  NWP argues that it is entitled to judgment as a matter of law—either under Rule 56 or Rule 12(c)—because New Mexico law does not permit Five Star to pursue a "backup claim" for prima facie tort.  [Doc. 51, p. 1]

The Motion sets forth as "facts" some of the SAC's factual allegations and claims, accepting factual allegations as true for purposes of the Motion.  [Doc. 43, pp. 2-3]  The Motion does not present any evidence or allege any new facts.  Both a motion under Rule 56 and a motion under Rule 12(c) are concerned with the substance of the parties' claims and defenses; both are directed toward a final judgment on the merits.  5C Charles A. Wright et al., *Federal Practice & Procedure* § 1369 (3d ed. updated 2016).  In fact, the treatise states that Rule 12(c) motions are "little more than a relic of the common law and code eras," no longer necessary because a court can proceed under Rule 56.  *Id*.  A Rule  12(c) motion is directed at the same question as a Rule 56 motion:  whether there is any genuine issue of fact, requiring trial.  Rule 12(c) allows resolution of a claim when the material facts are not in dispute, and the issue can be resolved as a question of law by looking at the pleadings.

As shown by the legal standards set forth in the preceding section, the court applies the same standard under Rule 12(c) or Rule 56.  *See* 5C Wright et al., *Federal Practice & Procedure* § 1369.  The court views the facts (or factual allegations) in the light most favorable to the nonmovant, allowing all reasonable inferences in favor of the nonmovant; the court then determines whether the movant is entitled to judgment as a matter of law.  Although NWP and Five Star both indicate a belief that a Rule 12(c) motion is subject to a more demanding standard than a Rule 56 motion, the Court disagrees.  [Doc. 48, p. 2; Doc. 51, p. 2]  A motion for summary judgment on the basis of the pleadings is functionally the same as a motion under Rule 12(c) for judgment on the pleadings.  *See In re Rothstein, Rosenfeldt, Adler, P.A.*, 717 F.3d 1205, 1211 n.15 (11th Cir. 2013) (treating motion as summary judgment motion, as styled, although motion relied on pleadings and no additional evidence).  In deciding NWP's Motion, the Court will accept all well-pleaded factual allegations in the SAC as true, view those factual allegations in the light most favorable to Five Star, and allow all reasonable inferences in favor of Five Star.

Five Star can have no complaint that this motion is treated as styled, as a summary judgment motion, even though NWP presented no evidence.  It is only in the opposite situation—when a Rule 12 motion is converted into a Rule 56 motion—that additional process may be required, giving notice and allowing the nonmovant the opportunity to present evidence.  *See GFF Corp. v. Associated Wholesale Grocers, Inc*., 130 F.3d 1381, 1385 (10th Cir. 1997).  Since NWP made its motion under Rule 56, Five Star had the opportunity to present evidence, thus satisfying the purposes of Rule 56.  Five Star cites no authority that a Rule 56 motion must be converted into a Rule 12(c) motion if the movant presents no evidence.  On the contrary, the Supreme Court held in *Celotex* that there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the

opponent's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as <u>whatever is before the district court</u> demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id*. (emphasis added).

Rule 56 directs that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   In this case, neither NWP nor Five Star suggests that there is any genuine dispute as to any fact material to the Motion.  The Court therefore proceeds to consider whether NWP has shown that it is entitled to judgment as a matter of law on the claim of prima facie tort.

## II.  Claims of Intentional Interference with Contract and Prima Facie Tort

The SAC asserts two claims:  Count 1—Intentional Interference with Existing Contract by Improper Means; and Count 2—Prima Facie Tort.  [Doc. 39, p. 5]  NWP moves for summary judgment on Count 2.

NWP argues that Five Star cannot prevail on Count 2 because:  (1) Count 2 is based on the same factual allegations as Count 1; and (2) a plaintiff may not bring a claim of prima facie tort under New Mexico law when, as here, the plaintiff has an established cause of action available.  NWP argues that a claim of prima facie tort cannot be used as a backup claim, nor can it be used to circumvent the requirements of an alternative, established cause of action.

In response, Five Star argues that it is entitled to proceed on alternative theories at least until the close of evidence.  Five Star also argues that each of its claims requires proof of an element not present in the other.  Five Star does not dispute NWP's statement that both of its claims rely on the same factual basis.

In this diversity action, the Court applies New Mexico substantive law.  The New Mexico Supreme Court first recognized a cause of action for prima facie tort in *Schmitz v. Smentowski*, 1990-NMSC-002, 785 P.2d 726.  The elements are:

1.  An intentional, lawful act by defendant;

2.  An intent to injure the plaintiff;

3.  Injury to plaintiff, and

4.  The absence of justification or insufficient justification for the defendant's acts.

*Id*. ¶ 37, 785 P.2d at 734; *see Hagebak v. Stone*, 2003-NMCA-007, ¶ 24, 61 P.3d 201, 208. "Prima facie tort is intended to provide a remedy for persons harmed by acts that are intentional and malicious, but otherwise lawful, which 'fall outside of the rigid traditional intentional tort categories.'"  *Hagebak*, 2003-NMCA-007, ¶ 24, 61 P.3d at 208 (quoting *Schmitz*, 1990-NMSC-002, ¶ 35, 785 P.2d at 734).  "Prima facie tort should be used to address wrongs that otherwise 'escape[ ] categorization,'" but "'should not be used to evade stringent requirements of other established doctrines of law.'"  *Hagebak*, 2003-NMCA-007, ¶ 24, 61 P.3d at 208 (quoting *Schmitz*, 1990-NMSC-002, ¶¶ 49, 63, 785 P.2d at 396, 398).  The New Mexico Supreme Court "emphasized the importance of limiting the cause of action," stating that it "was not intended to provide a remedy for every intentionally caused harm."  *Lexington Ins. Co. v. Rummel*, 1997-NMSC-043, ¶ 11, 945 P.2d 992, 995; *see Saylor v. Valles*, 2003-NMCA-037, ¶ 23, 63 P.3d 1152, 1159 (stating that prima facie tort is to be applied narrowly).  "[P]rima facie tort may be pleaded in the alternative; however, if at the close of the evidence, plaintiff's proof is susceptible to submission under one of the accepted categories of tort, the action should be submitted to the jury on that cause and not under prima facie tort."  *Schmitz*, 1990-NMSC-002, ¶ 48, 785 P.2d at 736.

NWP argues that Five Star has an established cause of action to pursue, because "the crux of Five Star's complaint is that Defendants interfered with its contract with Constructors." [Doc. 43, p. 3]   The theory underlying prima facie tort is "to provide remedy for intentionally committed acts that <u>do not</u> fit within the contours of accepted torts." *Schmitz*, 1990-NMSC-002, ¶ 48, 785 P.2d at 736 (emphasis added).   *Schmitz* allowed the plaintiff to proceed on a prima facie tort claim because the plaintiff could not proceed under alternative, traditional tort theories. *Id*. ¶ 63, 785 P.2d at 739-40.   In contrast, *Bogle* held that the plaintiff could not proceed on a prima facie tort claim, because a claim of intentional interference with contract was available:

> Although [the plaintiff] was unable to establish a claim under intentional interference with contract, that was the appropriate tort action in this case.  In addition, [the plaintiff] had a (successful) cause of action under breach of contract.  Thus existing causes of action provided reasonable avenues to a remedy for the asserted wrongful conduct.  As such, there was simply no need to resort to prima facie tort.  This is a classic case of a plaintiff trying to avoid "stringent requirements of other established doctrines of law" to impose liability in tort. *Schmitz*, 109 N.M. at 398, 785 P.2d at 738.  Prima facie tort has no application here.

*Bogle v. Summit Inv. Co.*, 2005-NMCA-024, ¶ 24, 107 P.3d 520, 529.  As in *Bogle*, the conduct alleged in the SAC fits within the contours of the accepted tort of intentional interference with contract; therefore, Five Star's claim for prima facie tort contravenes the theory underlying prima facie tort and Five Star's claim may not proceed.  *Schmitz*, 1990-NMSC-002, ¶ 48, 785 P.2d at 736.  A claim of prima facie tort that is duplicative of other claims is not permitted.  *Stock v. Grantham*, 1998-NMCA-081, ¶¶ 38-39, 964 P.2d 125, 136-37.  Nor can Five Star use a claim of prima facie tort to evade the requirements of an accepted tort.  *See Hagebak*, 2003-NMCA-007, ¶ 24, 61 P.3d at 208; *Stock*, 1998-NMCA-081, ¶¶ 38-39, 964 P.2d at 136-37; *Schuler v. McGraw-Hill Companies, Inc.*, 989 F. Supp. 1377, 1391 (D.N.M. 1997) (holding that because conduct alleged fits within contours of traditional tort, plaintiff cannot rely on prima facie tort to evade

requirements of more traditional tort, which is not proper use of prima facie tort), *aff'd*, 145 F.3d 1346 (10th Cir. 1998).

In addition, the SAC does not actually state a claim for prima facie tort.   "The commission of an intentional <u>lawful</u> act is the first element of a prima facie tort."   *Silverman v. Progressive Broad., Inc.*,, 1998-NMCA-107, ¶ 35, 964 P.2d 61, 71 (emphasis added); *see also Schmitz*, 1990-NMCA-002, ¶ 50, 785 P.2d at 736.

In *Silverman*, the plaintiff contended that the defendants committed a prima facie tort when they intentionally discriminated against her on the basis of sex.   *Silverman*, 1998-NMCA-017, ¶ 36, 964 P.2d at 71.   *Silverman* held, however, that if this allegation was true, the defendants' conduct violated Title VII and "would not constitute a lawful act necessary for a prima facie tort."   *Id*.   The court therefore affirmed the trial court's dismissal of the prima facie tort claim.   *Id*.

In this case, Five Star alleges under Count 1 that NWP intentionally interfered in the contract by improper means, namely denying Five Star entry to the premises "with full knowledge that this action would make it impossible for Plaintiff to comply with its side of the contract."   Under Count 2, Five Star alleges that Defendants knew that exclusion from the work site would cause harm and that this conduct was unjustifiable.   Five Star articulates no argument under which the SAC's allegations under Count 2 would show a lawful act—the first requirement of a claim for prima facie tort.   If the allegations on which Count 2 depends are true, Defendants committed intentional interference with contract; prima facie tort is therefore not available because Five Star has an established traditional tort available.   Since the SAC neglects to plead an essential element of a prima facie tort, Count 2 must be dismissed.   *See Saylor v. Valles*, 2003-NMCA-037, ¶¶ 23-24, 63 P.3d 1152, 1159.

11

The Court is not persuaded to the contrary by Five Star's arguments.

Five Star contends that *Guest* held "that a plaintiff can recover for both breach of contract and prima facie tort if the evidence at the time of jury submission could have supported the verdict on either or both causes of action."  [Doc. 48, p. 2]  *Guest v. Allstate Ins. Co.*, 2009-NMCA-037, ¶¶ 33, 35, 205 P.3d 844, 857-58, *aff'd in part and rev'd in part*, 2010-NMSC-047, 244 P.3d 342.  The Court disagrees with Five Star's interpretation of *Guest*.

In *Guest*, the New Mexico Court of Appeals determined that the factual predicates for the breach of contract and prima facie tort claims were not the same.  The court held that there was no error in submitting both causes of action to the jury, because there was sufficient evidence presented at trial to support either cause of action.  But the critical point—and the point which distinguishes Five Star's case—is that a factual finding by the jury in *Guest* would determine which of the two causes of action was supported.  If the jury found that a contract existed, the plaintiff had a cause of action for breach of contract, based on an unlawful act; if the jury found that no contract existed, the plaintiff had a cause of action for prima facie tort, based on a lawful act.  Under the latter alternative, the plaintiff had no breach of contract claim available:  "As a result, the prima facie tort claim offered relief that was not available under the breach of contract claim, by providing a means of addressing conduct by Allstate that would otherwise be lawful in the absence of a contract, but would support liability in tort."  *Guest*, 2009-NMCA-037, ¶ 35, 205 P.3d at 857-58.  But Five Star makes no argument that its two claims are distinct and not merely duplicative.  *See Hagebak*, 2003-NMCA-007, ¶¶ 27-29, 61 P.3d at 209 (holding that, upon plaintiff's argument of distinct and not duplicative claims, reasonable opportunity to marshal further evidence may be warranted).

Five Star contends that it was entitled to proceed with duplicative claims until the close of evidence, citing statements in *Schmitz*, 1990-NMSC-002, ¶ 48, 785 P.2d at 736, and *Guest*, 2009-NMCA-037, ¶ 33, 205 P.3d at 857.   But authority that a plaintiff may plead in the alternative does not mean that a court cannot dismiss a claim before trial because it is duplicative or because it does not properly plead a claim.  *See Saylor*, 2003-NMCA-037, ¶¶ 1, 23-24, 63 P.3d at 1155, 1159 (affirming district court's dismissal under Rule 1-012(B)(6), NMRA 2002, because complaint failed to plead essential elements of prima facie tort).   As the preceding discussion of *Guest* demonstrates, a plaintiff may proceed with the two claims if resolution depends on the jury's determination of a factual issue, and that factual finding determines which of the two causes of action is available.   Neither *Schmitz* nor *Guest* supports Five Star's broad contention that a plaintiff may, under all circumstances, proceed with both claims until the close of evidence.

Five Star sets forth the elements of interference with contract and prima facie tort, arguing that each tort contains an element not present in the other, but failing to articulate an argument or cite authority that this means it can proceed on both claims.   In addition, although Five Star contends that it must negate justification or privilege under the interference with contract claim, justification is also a consideration under a claim of prima facie tort.   *See Hagebak*, 2003-NMCA-007, ¶ 25, 61 P.3d at 208-09 (stating that the "activity complained of must be balanced against its justification," weighing various factors).

## CONCLUSION

Five Star is not entitled to proceed on its prima facie tort claim because the conduct alleged fits the contours of the established tort of intentional interference with contract.  In addition, the SAC does not make out an essential element of prima facie tort—that the conduct be lawful.

The material facts are undisputed, and NWP has demonstrated that it is entitled to judgment as a matter of law.  The Court concludes that NWP is entitled to summary judgment on Count 2, the prima facie tort claim.

**IT IS THEREFORE ORDERED** that:

Defendant Nuclear Waste Partnership, LLC's *Motion for Summary Judgment on Count II* [Doc. 43] is **GRANTED**.

_____

**UNITED STATES DISTRICT JUDGE**