## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**FIVE STAR AUTOMATIC FIRE
PROTECTION, LLC,**

      **Plaintiff,**

      **vs.**                           **Civ. No. 14-622 JCH/GBW**

**NUCLEAR WASTE PARTNERSHIP, LLC
and JERRY GOLDEN,**

      **Defendants.**


## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on *Jerry Golden's Motion for Summary Judgment*. [Doc. 44] Plaintiff Five Star Automatic Fire Protection, LLC ("Five Star"), filed a Response [Doc. 49] and a Supplemental Response [Doc. 87], and Jerry Golden filed a Reply [90].[1]

Having reviewed the Motion, briefs, evidence, and relevant law, the Court concludes that the Motion should be denied.


## FACTUAL BACKGROUND

## I. Facts Alleged in the Second Amended Complaint ("SAC")

Defendant Nuclear Waste Partnership, LLC ("NWP") operates the Waste Isolation Pilot Plant ("WIPP"), a facility of the United States Department of Energy, which stores hazardous waste. A fire protection system is absolutely necessary to the safe operation of the site.

---

[1] The Court notes that the parties' pleadings do not always comply with the Local Rules of Civil Procedure—specifically D.N.M.LR-Civ. 10.5 (limiting exhibits to 50 pages and allowing filing of "only those pages of an exhibit which are to be brought to the Court's attention) and D.N.M.LR-Civ. 10.6 (requiring marking of portions of exhibits brought to the Court's attention, with marking also apparent when printed in hard copy). The parties are cautioned to observe all rules in future.

Under a December 19, 2012 subcontract between Constructors, Inc. and Five Star, Five Star was to modify the fire protection system at the WIPP site.  [Doc. 1, pp. 8-9]  Jerry Golden, employed by NWP as a system engineer, was involved in preparing the statement of work for this project and obtaining approval of the design.   The plant could not operate without a continuously operational fire protection system, and Five Star needed to turn off the system while working on it; therefore, Five Star's "window of opportunity" in which to perform the work was critical.   Defendants were not formal signatories to the subcontract agreement, and that agreement was silent as to the commencement date; however, Defendants conducted most of the negotiations with Five Star and they had agreed to a commencement date of January 18, 2013. NWP conditioned its acceptance on this date of commencement.

Five Star is a Texas company with its principal place of business in El Paso County. Defendants knew that Luis Palacios, president and sole member of Five Star, would be preoccupied with his daughter's surgery for at least a week, from January 17 on.

On January 17, 2013, a Five Star crew traveled from El Paso to Carlsbad, intending to begin work the next day.   But Jerry Golden, an employee of NWP, had given four days off (January 18 to January 21) to the employees responsible for inspecting Five Star's materials, even though Golden knew that this action would prevent the Five Star crew from beginning their work on January 18.

When the Five Star crew arrived at the site on January 18, the security guard at the gate told them that the site was closed and would not let them in.  A Constructors, Inc. representative told them that NWP's materials inspectors were on holiday and it was impossible for Five Star to do the work.  The Five Star crew had no choice but to return home.

Over the next thirteen days, there were emails discussing what had happened.  NWP and Golden made pretextual and false excuses about Five Star's welding procedures, which they supposedly considered unsafe.  Eventually, on February 1, 2013, Constructors, Inc. and Five Star renegotiated the prior subcontract agreement for $12,600 additional compensation and a new commencement date of February 4, 2013.

On February 4, 2013, a Five Star crew returned to the WIPP site to begin work.  But they were again denied entrance to the site.

## II.  Facts Alleged in Golden's Motion for Summary Judgment ("MSJ")

Defendant Golden sets forth a limited number of allegations relevant to his MSJ.  It is undisputed that:  Golden was employed by NWP as a system engineer at the relevant times; there was a subcontract between Five Star and Constructors under which Five Star was to perform work on the fire suppression system at WIPP; and Golden was involved in preparing the statement of work for the project and obtaining approval of the design for the project.  [Doc. 44, p. 4]

Golden alleges that he acted within the scope of his employment and in furtherance of NWP's interests at all times relevant to Five Star's claims.  [Doc. 44, p. 4, ¶ 5]  Golden alleges that he did not have any personal interests implicated by this project, and that he did not stand to gain any benefit if Five Star was not able to perform its work on this project.  [Doc. 44, p. 5, ¶¶ 10-11]  Five Star disputes all of these allegations.  [Doc. 49, pp. 3-4]

## LEGAL STANDARDS

Summary judgment under Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).  A fact is material if it could have an effect on the outcome of the suit.  *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014).  A dispute over a material fact is genuine if the evidence presented could allow a rational jury to find in favor of the non-moving party.  *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party.  *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007).  The court cannot weigh the evidence and determine the truth of the matter, but instead determines whether there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

A party seeking summary judgment bears the initial burden of showing that there is no genuine dispute as to a material fact.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  When that party does not have the burden of persuasion at trial, it can satisfy its burden at the summary judgment stage by identifying a lack of evidence on an essential element of the claim.  *Id*. at 671.  If the movant satisfies its burden, the burden shifts to the non-movant. *Id*.

The party opposing summary judgment cannot rest on the pleadings, but must go beyond the pleadings and "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).  The nonmovant must "set forth specific facts" from which a rational trier of fact could find in the non-movant's favor, identifying those facts in the affidavits, deposition transcripts, or incorporated exhibits.  *Adler*, 144 F.3d at 671 (internal quotation marks omitted).  The party cannot rest on ignorance of the facts, on speculation, or on unsubstantiated conclusory allegations.  *Harvey Barnett, Inc. v.*

*Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003); *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.

1988).  "A fact is 'disputed' in a summary-judgment proceeding only if there is contrary evidence

or other sufficient reason to disbelieve it; a simple denial, much less an assertion of ignorance,

does not suffice."  *Grynberg v. Total S.A.*, 538 F.3d 1336, 1345 (10th Cir. 2008).

> For the claim of tortious interference with an existing contract, Five Star must show that:
>
> (1) the defendant had knowledge of the contract,
> (2) the plaintiff was unable to fulfill the contract's obligations,
> (3) the defendant played an active and substantial part in causing the plaintiff to
> lose the benefits of the contract,
> (4) the plaintiff suffered damages resulting from the breach, and
> (5) the defendant induced the breach without justification or privilege to do so.

*Lenscrafters, Inc. v. Kehoe*, 2012-NMSC-020, ¶ 40, 282 P.3d 758, 767.  The claim may be based

on an allegation that the defendant improperly interfered with the plaintiff's contractual relations

either through improper means or improper motive.  *Diversey Corp. v. Chem-Source Corp.*,

1998-NMCA-112, ¶ 20, 965 P.2d 332, 339.

> The elements of a cause of action for prima facie tort under New Mexico law are:
>
> 1. An intentional, lawful act by defendant;
> 2. An intent to injure the plaintiff;
> 3. Injury to plaintiff, and
> 4. The absence of justification or insufficient justification for the defendant's acts.

*Schmitz v. Smentowski*, 1990-NMSC-002, ¶ 37, 785 P.2d 726, 734; *see Hagebak v. Stone*, 2003-

NMCA-007, ¶ 24, 61 P.3d 201, 208.


## DISCUSSION

The SAC asserts two claims against Defendant Golden:  Count 1—Intentional

Interference with Existing Contract by Improper Means; and Count 2—Prima Facie Tort.  [Doc.

39, p. 5]  Golden moves for summary judgment on both claims.  Golden argues that he is entitled

to a qualified privilege allowing an employee of a corporation to interfere with his corporation's contracts, provided that he acts in good faith and in the best interests of the corporation as opposed to acting in his own private interests.  Golden argues that, even assuming the truth of Five Star's allegation that Five Star was unable to perform work because Golden gave NWP employees time off,[2] Golden cannot be held liable for intentional interference with an existing contract.

Golden argues that he is entitled to summary judgment on the prima facie tort claim because Five Star has an established cause of action to pursue:  intentional interference with contract.  To allow Five Star to proceed on the claim of prima facie tort would permit Five Star to circumvent the requirements of the tort of intentional interference with contract.

## I.  Qualified Privilege of Employee on Tortious Interference

Golden argues that he cannot be held liable for intentional interference with contract based on conduct taken within the scope of his employment, under a qualified privilege.  He argues that there are no allegations or evidence that he had a personal motive, personal interests or potential benefit, or that he acted outside the scope of his employment and not in furtherance of NWP's interests.  Golden contends that Five Star's allegation that Golden "made excuses" about safety concerns would not show that Golden was not acting in furtherance of NWP's interests.  Golden further argues that Five Star does not contend that Golden lacked authorization from NWP when he allegedly gave employees time off for a long Martin Luther King holiday.  Golden's argument is that there was no dispute that Golden acted within the scope of his employment and in furtherance of NWP's interests.

---

[2] Golden states that he disputes this allegation, alleging that he did not give employees time off, but instead that Five Star was prevented from performing its work because Five Star had not provided documents required by NWP as prerequisites to performance.  [Doc. 44, p. 5 n.1]

The tort can be accomplished by either of two methods—improper motive to harm the plaintiff, or improper means. *Zarr v. Washington Tru Solutions, LLC*, 2009-NMCA-050, ¶ 6, 208 P.3d 919, 921.  The requirement that the defendant's sole intention is to harm the plaintiff applies only under the improper-motive ground and not the improper-means ground. *Id*. ¶ 11, 208 P.3d at 922 (explaining that the "improper means ground for liability is sufficiently governed by the nature of the conduct required to be shown").

The SAC asserts intentional interference with the existing contract by improper means, when Defendants "deliberately and purposefully led Plaintiff to expect that Defendants would shut down the plant to open Plaintiff's window of opportunity and then admit Plaintiff's crew to do its work," and then twice denied "Plaintiff entry to the premises under Defendants' exclusive control, with full knowledge that this action would make it impossible for Plaintiff to comply with its side of the contract with Constructors."  [Doc. 39, p. 5, ¶¶ 13-14]  Improper means includes "'violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood.'"  *M & M Rental Tools, Inc. v. Milchem, Inc*., 1980-NMCA-072, ¶ 29, 612 P.2d 241, 246 (quoting *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.*, 582 P.2d 1365, 1371 n.11 (Or. 1978) (en banc)); *Zarr*, 2009-NMCA-050, ¶ 11, 208 P.3d at 922.  This list is not definitive, but indicates the type of conduct considered improper.  *M & M Rental Tools, Inc.*, 1980-NMCA-072, ¶ 29, 612 P.2d at 246.  What qualifies as improper means "depends to some extent on context." *Zarr*, 2009-NMCA-050, ¶ 11, 208 P.3d at 922.

### A.  Genuine dispute on material fact

Five Star alleges that Golden knew that:  the Five Star crew would arrive to begin their work on January 18, 2013; Five Star would be unable to do the work because Golden gave the employees responsible for inspecting Five Star's materials four days off for the Martin Luther

King holiday (January 18 through January 21); and Palacios, 150 miles away in El Paso preparing for his daughter's surgery, would be completely blindsided by this development.  [Doc. 39, pp. 3-4, ¶ 8]  Defendants deny these allegations.  [Doc. 40, p. 2, ¶ 8]  Five Star further alleges that:  when the Five Star crew arrived at the WIPP site on the morning of January 18th, the security guard on duty at the gate informed them that the site was closed and would not let them in; a Constructors representative told the foreman Mark Galaviz that NWP's materials inspectors were on holiday and it was therefore impossible for Five Star to do the work; Galaviz reached Palacios by cell phone in El Paso; and the Five Star crew had no choice but to return home.  [Doc. 39, p. 4, ¶ 9]  Defendants' answer states that they deny these allegations, lacking sufficient information to admit or deny, but "Defendants affirmatively state that the site was not closed." [Doc. 40, p. 2, ¶ 9]

Golden's MSJ alleges that:  he acted within the scope of his employment, in good faith, and in furtherance of NWP's interests; he had no personal interests implicated by the project; and that he did not stand to gain any benefit if Five Star was unable to perform its work under the subcontract.  Five Star disputes these allegations, contending that there is evidence of bad faith. [Doc. 49, pp. 4-8]  Five Star contends that Golden changed the minutes of a meeting, deleting an earlier statement that no welding requirements apply; and sent an email referring to an alleged speakerphone meeting, "effectively backdating" concerns about welding.  [Doc. 49, pp. 7-8; Doc. 49-1, pp. 28 & 30, ¶ 7; Doc. 49-1, p. 35; Doc. 87, pp. 1-8]  Five Star alleges that the welding documentation had not initially been required, but was given as an excuse for turning away the Five Star crew for the second time, on February 4, 2013.  [Doc. 87, p. 6]  Five Star alleges that these allegations constitute circumstantial evidence of bad faith, and summary judgment is inappropriate.  Golden's Reply argues that Five Star has not cited evidence that Golden acted

outside the scope of his employment, in furtherance of his own interests, or so as to gain a personal benefit.  [Doc. 90, pp. 4-5]

The Court will not address these conflicting allegations at this time.  The Court concludes that it need not determine whether a genuine dispute on a material fact precludes summary judgment, because—as discussed below—the Court concludes that Defendant Golden fails to show that he is entitled to judgment as a matter of law.

### B.  Entitlement to judgment as a matter of law

Golden cites three New Mexico cases in support of his argument that he is entitled to a qualified privilege:  *Ettenson v. Burke*, 2001-NMCA-003, 17 P.3d 440; *Deflon v. Sawyers*, 2006-NMCA-025, 137 P.3d 577; and *Bogle v. Summit Inv. Co.*, 2005-NMCA-024, 107 P.3d 520.  Five Star responds that authority cited by Golden is inapposite, because those cases involve claims against a corporate employee for interference with the corporate employer's contract.  [Doc. 49, pp. 8-9]

In *Ettenson*, the New Mexico Court of Appeals held as a matter of first impression under New Mexico law that an employee can sue his supervisor individually for the tort of interference with the contract between the corporation and the employee; *Ettenson* holds that a corporate officer has a qualified privilege "to interfere with his corporation's contracts only when he acts in good faith and in the best interests of the corporation, as opposed to his own private interests." *Ettenson*, 2001-NMCA-003, ¶ 17, 17 P.3d at 446-47 (emphasis added).  The New Mexico Supreme Court later adopted the Court of Appeals' analysis in *Ettenson*.  *See Deflon*, 2006-NMSC-025, ¶ 9, 137 P.3d at 581.  "The idea behind the qualified immunity theory is that an officer acting on behalf of a corporation should have the authority to breach a corporation's contract, leaving the corporation to answer for the authorized breach in a breach of contract

action." *Deflon*, 2006-NMSC-025, ¶ 9, 137 P.3d at 581.  But an "officer acting outside the scope of his or her employment and his or her own private interest has no authority to breach the corporation's contract, and that officer should not be able to hide behind a corporate shield for unauthorized conduct."  *Id.*; *see Bogle*, 2005-NMCA-024, ¶¶ 18-21, 107 P.3d at 528-29 (holding that general manager of Summit had qualified privilege to interfere with Summit's own contract, when manager was not shown to have acted with improper personal or individual motive).  It is the defendant's burden to plead and prove this qualified privilege as an affirmative defense. *Ettenson*, 2001-NMCA-003, ¶ 21, 17 P.3d at 448; *see M & M Rental Tools, Inc. v. Milchem, Inc.,* 1980-NMCA-072, ¶ 38, 612 P.2d 241, 247 (stating that once plaintiff shows improper interference, defendant has the burden of proving any privilege relied on).

The language and theory of *Ettenson* and *Deflon* show that the qualified privilege is limited to cases in which a corporate officer interferes with his corporation's own contracts.  As Five Star argues, Golden is an employee of NWP, and NWP is not a party to the subcontract at issue; the qualified privilege adopted in *Ettenson* and *Deflon* is therefore inapplicable.  As the New Mexico Supreme Court reasoned, in cases like *Ettenson* and *Deflon* the corporation is left to answer for breach of contract.  *Deflon*, 2006-NMSC-025, ¶ 9, 137 P.3d at 581.  But in this case, NWP was not left to answer for breach of contract, but for intentional interference with contract: the contract was not "the corporation's" contract.

Similarly, the caselaw Golden cites from other jurisdictions concerns the privilege of a employee of a corporation dealing with his own corporation's contracts—not a contract between two third parties.  [Doc. 44, pp. 6-7]  *See Zelinger v. Uvalde Rock Asphalt Co.*, 316 F.2d 47, 52 (10th Cir. 1963) (involving Colorado law, and stating "the rule that any interference with <u>a corporation's contract</u> by an officer, director or employee <u>of the corporation</u> who is in good faith

serving the corporate interests is privileged" (emphasis added)); *Union Mut. Life Ins. Co. v. Chrysler Corp.*, 793 F.2d 1, 12 (1st Cir. 1986) ("Massachusetts privileges even intentional interference with contract rights by the <u>employees of a contracting corporation</u> if, as here, the defendant acted for a purpose that was 'part of his employment responsibilities.'" (emphasis added)); *Borowski v. DePuy, Inc.*, 850 F.2d 297, 302-03 (7th Cir. 1988) (involving Illinois law, and stating that "corporate employees such as Bales are privileged and cannot be held liable for tortiously interfering with <u>a contract of their employer</u>" while discharging their "usual and customary duties "on behalf of the corporation" (emphasis added)); *Siddoway v. Bank of America*, 748 F. Supp. 1456, 1460 (N.D. Cal. 1990) (under California law, "a supervisor or managerial employee is privileged to induce the breach of an employment contract or otherwise interfere with business or economic relations on behalf of his employer); *Wampler v. Palmerton*, 439 P.2d 601, 606 (Or. 1968) (stating that officers and employees of a corporation tend to be shielded from responsibility for inducing breach of the corporate contract, if acting in good faith and for benefit of the corporation).

The issue before this Court concerns New Mexico caselaw, of course. But even if New Mexico caselaw were in perfect accord with this out-of-jurisdiction caselaw, these cases provide no support for Golden's argument.

*Wampler* provides an illuminating discussion of the policy and principle involved. As the Supreme Court of Oregon observed, in the usual case "the person interfering is a complete stranger to the contractual relationship"; *Wampler* involved the "complicating ingredient" when the person inducing breach of the corporation's contract "is a person who, by reason of his position with the corporation, owes a duty of advice and action to the corporation." *Wampler*, 439 P.2d at 606. "The person contracting with the corporation cannot reasonably have any

11

contractual expectancy that does not take into consideration the fact that the corporation may be advised to breach the contract, in accordance with its interest, by a person whose duty it is to do so." *Id.* "So long as the officer or employe[e] acts within the general range of his authority intending to benefit the corporation, the law identifies his actions with the corporation," and "the officer is not liable for interfering with a contract of the corporation any more than the corporation could be liable in tort for interfering with it." *Id.* at 607. "The interest protected by the interference with contract action is the interest of the plaintiff in not having his contract rights interfered with by intermeddling strangers." *Id.* (emphasis added).

The holding of all of these cases is that there may be a qualified privilege for interference in a corporation's own contract by an officer or employee of that corporation. The reasoning and analysis of the cases illustrate that the policy and principles underlying the qualified privilege are inapplicable when the person interfering is an employee of a corporation which is not a party to the contract.

Five Star's Response made this point, arguing that Golden's caselaw was inapposite, because the cases involved claims against a corporate employee for interference with the corporate employer's contract—while in this case, the contract is between Five Star and Constructors, and Golden's corporate employer is not a party. In reply, Golden merely cited the same cases and made the cursory contention that the "distinction does not make the privilege any less applicable" because "NWP was a beneficiary of the contract between Constructors and Five Star." [Doc. 90, p. 10] The Court disagrees; the distinction is critical. Golden failed to carry his burden to develop or articulate an argument that this distinction was irrelevant, and failed to cite any supporting authority that the New Mexico Supreme Court would extend *Ettenson* and *Deflon* and *Bogle* beyond the circumstances on which the qualified privilege is based. *See* D.N.M.LR-

Civ. 7.3(a) (requiring party to cite authority in support of legal positions advanced); *Cahill v. Am. Family Mut. Ins. Co.*, 610 F.3d 1235, 1238-39 (10th Cir. 2010) (court need not address conclusory arguments unsupported by citation to relevant authority); *Arizona Pub. Serv. Co. v. U.S. EPA*, 562 F.3d 1116, 1130 (10th Cir. 2009) (same).

The Court concludes that Golden failed to carry his burden under Rule 56 to show that there are no genuine disputes as to material facts and that he is entitled to judgment as a matter of law. The Court will deny Golden's motion for summary judgment on Count 1, intentional interference with existing contract.

## II.  Prima Facie Tort

Golden moves for summary judgment on the prima facie tort claim under Count 2, arguing that:  (1) Count 2 is based on the same factual allegations as Count 1; and (2) a plaintiff may not bring a claim of prima facie tort under New Mexico law when, as here, the plaintiff has an established cause of action available. Golden argues that Five Star cannot rely on prima facie tort to circumvent the requirements of the tort of intentional interference with contract.

In response, Five Star argues that it is entitled to proceed on alternative theories at least until the close of evidence. [Doc. 49, pp. 10-11] Five Star also argues that each of its claims requires proof of an element not present in the other. Five Star does not dispute Golden's statement that both of its claims rely on the same factual basis.

### A.  Rule 56 or Rule 12(c)

Golden made his motion under Rule 56. Five Star's response argues:  "The motion should be denied as to Count II because Movant has dressed up what is in reality a disfavored motion for judgment on the pleadings under Rule 12(c) as a motion for summary judgment." [Doc. 49, p. 1] Five Star further argues:  The Motion cites no Federal authority for treating a

motion for judgment on the pleadings as one for summary judgment, and Plaintiff submits there is none." [Doc. 49, p. 1]  Five Star observes that Golden attached no evidentiary appendix, instead relying on the alleged insufficiency of the complaint.  [Doc. 49, p. 10]  Five Star contends that the motion alleges a defect in the pleadings, and should not be decided as a summary judgment motion.

Both a motion under Rule 56 and a motion under Rule 12(c) are concerned with the substance of the parties' claims and defenses; both are directed toward a final judgment on the merits.  5C Charles A. Wright et al., *Federal Practice & Procedure* § 1369 (3d ed. updated 2016).  In fact, the treatise states that Rule 12(c) motions are "little more than a relic of the common law and code eras," no longer necessary because a court can proceed under Rule 56.  *Id*. A Rule  12(c) motion is directed at the same question as a Rule 56 motion:  whether there is any genuine issue of fact, requiring trial.  Rule 12(c) allows resolution of a claim when the material facts are not in dispute, and the issue can be resolved as a question of law by looking at the pleadings.

The court applies the same standard under Rule 12(c) or Rule 56.  *See* 5C Wright et al., *Federal Practice & Procedure* § 1369.  The court views the facts (or factual allegations) in the light most favorable to the nonmovant, allowing all reasonable inferences in favor of the nonmovant; the court then determines whether the movant is entitled to judgment as a matter of law.  A motion for summary judgment on the basis of the pleadings is functionally the same as a motion under Rule 12(c) for judgment on the pleadings.  *See In re Rothstein, Rosenfeldt, Adler, P.A.*, 717 F.3d 1205, 1211 n.15 (11th Cir. 2013) (treating motion as summary judgment motion, as styled, although motion relied on pleadings and no additional evidence).

Five Star cites no authority that a Rule 56 motion must be converted into a Rule 12(c) motion if the movant presents no evidence relevant to one issue.  On the contrary, the Supreme Court held in *Celotex* that there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as <u>whatever is before the district court</u> demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id*. (emphasis added).

Rule 56 directs that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In this case, neither Golden nor Five Star suggests that there is any genuine dispute as to any fact material to the motion directed to Count 2, the claim of prima facie tort. The Court therefore proceeds to consider whether Golden has shown that he is entitled to judgment as a matter of law on the claim of prima facie tort.

**B.  Claims of both intentional interference with contract and prima facie tort**

In this diversity action, the Court applies New Mexico substantive law.  The New Mexico Supreme Court first recognized a cause of action for prima facie tort in *Schmitz v. Smentowski*, 1990-NMSC-002, 785 P.2d 726.  The elements are:

1. An intentional, lawful act by defendant;

2. An intent to injure the plaintiff;

3. Injury to plaintiff, and

4. The absence of justification or insufficient justification for the defendant's acts.

*Id.* ¶ 37, 785 P.2d at 734; *see Hagebak v. Stone*, 2003-NMCA-007, ¶ 24, 61 P.3d 201, 208.

"Prima facie tort is intended to provide a remedy for persons harmed by acts that are intentional

and malicious, but otherwise lawful, which 'fall outside of the rigid traditional intentional tort

categories.'"   *Hagebak*, 2003-NMCA-007, ¶ 24, 61 P.3d at 208 (quoting *Schmitz*, 1990-NMSC-

002, ¶ 35, 785 P.2d at 734).   "Prima facie tort should be used to address wrongs that otherwise

'escape[ ] categorization,'" but "'should not be used to evade stringent requirements of other

established doctrines of law.'"   *Hagebak*, 2003-NMCA-007, ¶ 24, 61 P.3d at 208 (quoting

*Schmitz*, 1990-NMSC-002, ¶¶ 49, 63, 785 P.2d at 396, 398).   The New Mexico Supreme Court

"emphasized the importance of limiting the cause of action," stating that it "was not intended to

provide a remedy for every intentionally caused harm."   *Lexington Ins. Co. v. Rummel*, 1997-

NMSC-043, ¶ 11, 945 P.2d 992, 995; *see Saylor v. Valles*, 2003-NMCA-037, ¶ 23, 63 P.3d 1152,

1159 (stating that prima facie tort is to be applied narrowly).   "[P]rima facie tort may be pleaded

in the alternative; however, if at the close of the evidence, plaintiff's proof is susceptible to

submission under one of the accepted categories of tort, the action should be submitted to the

jury on that cause and not under prima facie tort."   *Schmitz*, 1990-NMSC-002, ¶ 48, 785 P.2d at

736.

　　Golden argues that Five Star has an established cause of action to pursue, because "the

essence of Five Star's complaint is that Defendants interfered with its contract with

Constructors."   [Doc. 44, p. 9]   The theory underlying prima facie tort is "to provide remedy for

intentionally committed acts that <u>do not</u> fit within the contours of accepted torts."   *Schmitz*, 1990-

NMSC-002, ¶ 48, 785 P.2d at 736 (emphasis added).   *Schmitz* allowed the plaintiff to proceed on

a prima facie tort claim because the plaintiff could not proceed under alternative, traditional tort

theories.   *Id.* ¶ 63, 785 P.2d at 739-40.   In contrast, *Bogle* held that the plaintiff could not proceed

on a prima facie tort claim, because a claim of intentional interference with contract was available:

> Although [the plaintiff] was unable to establish a claim under intentional interference with contract, that was the appropriate tort action in this case. In addition, [the plaintiff] had a (successful) cause of action under breach of contract. Thus existing causes of action provided reasonable avenues to a remedy for the asserted wrongful conduct. As such, there was simply no need to resort to prima facie tort. This is a classic case of a plaintiff trying to avoid "stringent requirements of other established doctrines of law" to impose liability in tort. *Schmitz*, 109 N.M. at 398, 785 P.2d at 738. Prima facie tort has no application here.

*Bogle v. Summit Inv. Co.*, 2005-NMCA-024, ¶ 24, 107 P.3d 520, 529. As in *Bogle*, the conduct alleged in the SAC fits within the contours of the accepted tort of intentional interference with contract; therefore, Five Star's claim for prima facie tort contravenes the theory underlying prima facie tort and Five Star's claim may not proceed. *Schmitz*, 1990-NMSC-002, ¶ 48, 785 P.2d at 736. A claim of prima facie tort that is duplicative of other claims is not permitted. *Stock v. Grantham*, 1998-NMCA-081, ¶¶ 38-39, 964 P.2d 125, 136-37.

Nor can Five Star use a claim of prima facie tort to evade the requirements of an accepted tort. *See Hagebak*, 2003-NMCA-007, ¶ 24, 61 P.3d at 208; *Stock*, 1998-NMCA-081, ¶¶ 38-39, 964 P.2d at 136-37; *Schuler v. McGraw-Hill Companies, Inc*., 989 F. Supp. 1377, 1391 (D.N.M. 1997) (holding that because conduct alleged fits within contours of traditional tort, plaintiff cannot rely on prima facie tort to evade requirements of more traditional tort, which is not proper use of prima facie tort), *aff'd*, 145 F.3d 1346 (10th Cir. 1998). Golden argues that this case is virtually indistinguishable from *Bogle*. Golden contends that even though Five Star cannot establish a claim under intentional interference with contract—because Golden is entitled to a qualified privilege under *Ettenson* and *Deflon*—Five Star is not allowed to circumvent the requirements of intentional interference with contract and that qualified privilege.

17

As discussed above, the Court disagrees with Golden's claim that he is entitled to claim a qualified privilege.  The Court concludes that Five Star cannot proceed on prima facie tort because Count 2 is duplicative of the established tort of intentional interference with contract, which is the appropriate and available cause of action.

In addition, the SAC does not actually state a claim for prima facie tort.  "The commission of an intentional lawful act is the first element of a prima facie tort." *Silverman v. Progressive Broad., Inc.,*, 1998-NMCA-107, ¶ 35, 964 P.2d 61, 71 (emphasis added); *see also Schmitz*, 1990-NMCA-002, ¶ 50, 785 P.2d at 736.

In *Silverman*, the plaintiff contended that the defendants committed a prima facie tort when they intentionally discriminated against her on the basis of sex.  *Silverman*, 1998-NMCA-017, ¶ 36, 964 P.2d at 71.  *Silverman* held, however, that if this allegation was true, the defendants' conduct violated Title VII and "would not constitute a lawful act necessary for a prima facie tort." *Id*.  The court therefore affirmed the trial court's dismissal of the prima facie tort claim.  *Id*.

In this case, Five Star alleges under Count 1 that Golden intentionally interfered with the subcontract by improper means, namely denying Five Star entry to the premises "with full knowledge that this action would make it impossible for Plaintiff to comply with its side of the contract."  Under Count 2, Five Star alleges that Defendants knew that exclusion from the work site would cause harm and that this conduct was unjustifiable.  Five Star articulates no argument under which the SAC's allegations under Count 2 would show a lawful act—the first requirement of a claim for prima facie tort.  If the allegations on which Count 2 depends are true, Defendants committed intentional interference with contract; prima facie tort is therefore not available because Five Star has an established traditional tort available.  Since the SAC neglects to plead

an essential element of a prima facie tort, Count 2 must be dismissed.  *See Saylor v. Valles*, 2003-NMCA-037, ¶¶ 23-24, 63 P.3d 1152, 1159.

The Court is not persuaded to the contrary by Five Star's arguments.

Five Star contends that *Guest* held "that a plaintiff can recover for both breach of contract and prima facie tort if the evidence, at the time of jury submission, could have justified a verdict on either or both causes of action."  [Doc. 49, p. 11]  *Guest v. Allstate Ins. Co.*, 2009-NMCA-037, ¶¶ 33, 35, 205 P.3d 844, 857-58, *aff'd in part and rev'd in part*, 2010-NMSC-047, 244 P.3d 342.  The Court disagrees with Five Star's interpretation of *Guest*.

In *Guest*, the New Mexico Court of Appeals determined that the factual predicates for the breach of contract and prima facie tort claims were not the same.  The court held that there was no error in submitting both causes of action to the jury, because there was sufficient evidence presented at trial to support either cause of action.  But the critical point—and the point which distinguishes Five Star's case—is that a factual finding by the jury in *Guest* would determine which of the two causes of action was supported.  If the jury found that a contract existed, the plaintiff had a cause of action for breach of contract, based on an unlawful act; if the jury found that no contract existed, the plaintiff had a cause of action for prima facie tort, based on a lawful act.  Under the latter alternative, the plaintiff had no breach of contract claim available:  "As a result, the prima facie tort claim offered relief that was not available under the breach of contract claim, by providing a means of addressing conduct by Allstate that would otherwise be lawful in the absence of a contract, but would support liability in tort."  *Guest*, 2009-NMCA-037, ¶ 35, 205 P.3d at 857-58.  But Five Star makes no argument that its two claims are distinct and not merely duplicative.  *See Hagebak*, 2003-NMCA-007, ¶¶ 27-29, 61 P.3d at 209 (holding that,

upon plaintiff's argument of distinct and not duplicative claims, reasonable opportunity to marshal further evidence may be warranted).

Five Star contends that it was entitled to proceed with duplicative claims until the close of evidence, citing statements in *Schmitz*, 1990-NMSC-002, ¶ 48, 785 P.2d at 736, and *Guest*, 2009-NMCA-037, ¶ 33, 205 P.3d at 857.  [Doc. 49, p. 11]  But authority that a plaintiff may plead in the alternative does not mean that a court cannot dismiss a claim before trial because it is duplicative or because it does not properly plead a claim.  *See Saylor*, 2003-NMCA-037, ¶¶ 1, 23-24, 63 P.3d at 1155, 1159 (affirming district court's dismissal under Rule 1-012(B)(6), NMRA 2002, because complaint failed to plead essential elements of prima facie tort).  As the preceding discussion of *Guest* demonstrates, a plaintiff may proceed with the two claims if resolution depends on the jury's determination of a factual issue, and that factual finding determines which of the two causes of action is available.  Neither *Schmitz* nor *Guest* supports Five Star's broad contention that a plaintiff may, under all circumstances, proceed with both claims until the close of evidence.

Five Star sets forth the elements of interference with contract and prima facie tort, arguing that each tort contains an element not present in the other, but failing to articulate an argument or cite authority that this means it can proceed on both claims.  In addition, although Five Star contends that it must negate justification or privilege under the interference with contract claim, justification is also a consideration under a claim of prima facie tort.  *See Hagebak*, 2003-NMCA-007, ¶ 25, 61 P.3d at 208-09 (stating that the "activity complained of must be balanced against its justification," weighing various factors).

## CONCLUSION

The Court concludes that Defendant Golden fails to carry his burden to show that he is entitled to judgment as a matter of law under Count 1.  Golden has not shown that the qualified privilege of *Ettenson* and *Deflon* is available under the circumstances of this case. The Court denies Golden's motion for summary judgment on Count 1.

Five Star is not entitled to proceed on its prima facie tort claim, because the conduct alleged fits the contours of the established tort of intentional interference with contract.  In addition, the SAC does not make out an essential element of prima facie tort—that the conduct be lawful.  The Court concludes that Golden has demonstrated that he is entitled to judgment as a matter of law on Count 2, and grants Golden's motion for summary judgment on the prima facie tort claim.

**IT IS THEREFORE ORDERED** that:

*Jerry Golden's Motion for Summary Judgment* [Doc. 44] is **DENIED in part**, and **GRANTED in part**, as discussed above.

_____
**UNITED STATES DISTRICT JUDGE**