## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**FIVE STAR AUTOMATIC FIRE
PROTECTION, LLC,**

      **Plaintiff,**

    **vs.**                               **Civ. No. 14-622 JCH/GBW**

**NUCLEAR WASTE PARTNERSHIP, LLC
and JERRY GOLDEN,**

      **Defendants.**

### <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on *Defendants' Motion for Summary Judgment Based on the Unlawful Acts Doctrine*. [Doc. 74] Plaintiff Five Star Automatic Fire Protection, LLC ("Five Star"), filed a Response [Doc. 86], and Defendants Nuclear Waste Partnership, LLC ("NWP") and Jerry Golden filed a Reply [89]. Without the Court's permission, Five Star then filed *Plaintiff's Objections to Defendants' Additional Summary Judgment Evidence* [Doc. 91] regarding Defendants' additional summary judgment evidence attached to the Reply [Doc. 91], Defendants filed a response [Doc. 92], and Five Star filed a reply [Doc. 93].[1]

Having reviewed the Motion, briefs, evidence, and relevant law, the Court concludes that Defendants' Motion should be denied and Plaintiff's Objections should be overruled and denied as moot.

---

[1] The rules do not provide for "objections" to a reply, followed by a "response" and another "reply." These pleadings essentially began with a surreply, which "requires leave of the Court," D.N.M.LR-Civ. 7.4(b), followed by another round of response and reply without permission. In addition, the Court notes that the parties' pleadings do not all comply with D.N.M.LR-Civ. 10.5 (limiting exhibits to 50 pages and allowing filing of "only those pages of an exhibit which are to be brought to the Court's attention) and D.N.M.LR-Civ. 10.6 (requiring marking of portions of exhibits brought to the Court's attention, with marking also apparent when printed in hard copy). The parties are cautioned to observe all rules in future.

## FACTUAL BACKGROUND

### I.  Facts Alleged in the Second Amended Complaint ("SAC")

NWP operates the Waste Isolation Pilot Plant ("WIPP"), a facility of the United States Department of Energy, which stores hazardous waste.  A fire protection system is absolutely necessary to the safe operation of the site.

Under a subcontract with Constructors, Inc., Five Star was to modify the fire protection system at the WIPP site.  The plant could not operate without a continuously operational fire protection system, and Five Star needed to turn off the system while working on it; therefore, Five Star's "window of opportunity" in which to perform the work was critical.  Defendants were not formal signatories to the subcontract agreement, and that agreement was silent as to the commencement date; however, Defendants conducted most of the negotiations with Five Star and they had agreed to a commencement date of January 18, 2013.  NWP conditioned its acceptance on this date of commencement.

Five Star is a Texas company with its principal place of business in El Paso County. Defendants knew that Luis Palacios, president and sole member of Five Star, would be preoccupied with his daughter's surgery for at least a week, from January 17 on.

On January 17, 2013, a Five Star crew traveled from El Paso to Carlsbad, intending to begin work the next day.  But Jerry Golden, an employee of NWP, had given four days off (January 18 to January 21) to the employees responsible for inspecting Five Star's materials, even though Golden knew that this action would prevent the Five Star crew from beginning their work on January 18.

When the Five Star crew arrived at the site on January 18, the security guard at the gate told them that the site was closed and would not let them in.  A Constructors, Inc. representative

told them that NWP's materials inspectors were on holiday and it was impossible for Five Star to do the work.  The Five Star crew had no choice but to return home.

Over the next thirteen days, there were emails discussing what had happened.  NWP and Golden made pretextual and false excuses about Five Star's welding procedures, which they supposedly considered unsafe.  Eventually, on February 1, 2013, Constructors, Inc. and Five Star renegotiated the prior subcontract agreement for $12,600 additional compensation and a new commencement date of February 4, 2013.

On February 4, 2013, a Five Star crew returned to the WIPP site to begin work.  But they were again denied entrance to the site.

## II.  Facts Alleged in Defendants' Motion for Summary Judgment

The following is a summary of some of the main factual allegations in Defendants' summary judgment motion.[2]

Defendants allege that NFPA standards required three documents to be in place prior to any welding of the fire sprinkler system:  a Welding Procedure Specification, a Procedure Qualification Record, and a Welder Performance Qualification.   Undisputed Material Fact ("UMF") # 3.

Defendants allege that Five Star fabricated the welding procedure documents by making alterations to old forms and used Lonnie Roesel's name on the Procedure Qualification Record ("PQR") without talking to Roesel about the document.  UMF # 10-12.

Defendants allege that Roesel did not conduct the tests the Procedure Qualification Record indicated he had performed, and did not supervise any testing performed by Santiago Ramirez of Five Star, the welder identified on that Record.  UMF # 16-17.

---

[2] Because the Court finds it unnecessary to reach the issue of whether there is a genuine dispute on a material fact, the Court does not attempt to set forth a comprehensive statement of Defendants' factual allegations here.

Five Star's Welding Procedure Specification was not qualified by Five Star as required by NFPA 13.   UMF #23.   The documents Five Star submitted to Constructors and NWP are fraudulent because they do not reflect testing of the welding procedure or the welder, as required by NFPA 13 and American Society of Mechanical Engineers standards.   UMF # 24.

## LEGAL STANDARDS

Summary judgment under Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   A fact is material if it could have an effect on the outcome of the suit.   *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014).   A dispute over a material fact is genuine if the evidence presented could allow a rational jury to find in favor of the non-moving party.   *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).   The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party.   *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007).   The court cannot weigh the evidence and determine the truth of the matter, but instead determines whether there is a genuine issue for trial.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

A party seeking summary judgment bears the initial burden of showing that there is no genuine dispute as to a material fact.   *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).   When that party does not have the burden of persuasion at trial, it can satisfy its burden at the summary judgment stage by identifying a lack of evidence on an essential element of the claim.   *Id.* at 671.   If the movant satisfies its burden, the burden shifts to the non-movant. *Id.*

The party opposing summary judgment cannot rest on the pleadings, but must go beyond the pleadings and "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The nonmovant must "set forth specific facts" from which a rational trier of fact could find in the non-movant's favor, identifying those facts in the affidavits, deposition transcripts, or incorporated exhibits. *Adler*, 144 F.3d at 671 (internal quotation marks omitted). The party cannot rest on ignorance of the facts, on speculation, or on unsubstantiated conclusory allegations. *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003); *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988). "A fact is 'disputed' in a summary-judgment proceeding only if there is contrary evidence or other sufficient reason to disbelieve it; a simple denial, much less an assertion of ignorance, does not suffice." *Grynberg v. Total S.A.*, 538 F.3d 1336, 1345 (10th Cir. 2008).

For the claim of tortious interference with an existing contract, Five Star must show that:

(1) the defendant had knowledge of the contract,
(2) the plaintiff was unable to fulfill the contract's obligations,
(3) the defendant played an active and substantial part in causing the plaintiff to
        lose the benefits of the contract,
(4) the plaintiff suffered damages resulting from the breach, and
(5) the defendant induced the breach without justification or privilege to do so.

*Lenscrafters, Inc. v. Kehoe*, 2012-NMSC-020, ¶ 40, 282 P.3d 758, 767. The claim may be based on an allegation that the defendant improperly interfered with the plaintiff's contractual relations either through improper means or improper motive. *Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 20, 965 P.2d 332, 339.

The elements of a cause of action for prima facie tort under New Mexico law are:

1. An intentional, lawful act by defendant;
2. An intent to injure the plaintiff;

    3.  Injury to plaintiff, and

    4.  The absence of justification or insufficient justification for the defendant's acts.

*Schmitz v. Smentowski*, 1990-NMSC-002, ¶ 37, 785 P.2d 726, 734; *see Hagebak v. Stone*, 2003-NMCA-007, ¶ 24, 61 P.3d 201, 208.

## DISCUSSION

Defendants argue that Five Star falsified documents in an effort "to feign compliance" with applicable standards, that Five Star could not have done the work without complying with those standards, and that, under the Unlawful Acts Doctrine, Five Star's fraud and violation of standards preclude Five Star from prevailing on its claims "because applicable law does not permit recovery based on wrongful, immoral, or illegal conduct."  [Doc. 74, p. 2]

Five Star disputes the allegations of falsifying documents and argues that it complied with NFPA standards.  Five Star also argues that Defendants' authority for the Unlawful Acts Doctrine is inapplicable, because it is limited to cases involving violations of licensing laws.

## I.  Genuine Dispute on Material Fact

Defendants allege that Five Star:  falsified documents submitted to Constructors and NWP; violated NFPA standards; and made multiple misrepresentations to Constructors and NWP.  Five Star disputes these allegations.

Defendants allege that Five Star fabricated the welding procedure documents by making alterations to old forms and used Lonnie Roesel's name on the Procedure Qualification Record ("PQR") without talking to Roesel about the document.  UMF # 10-12.  Palacios testified that he took the old Welding Procedures Specification and changed the old date to January 2013.  [Doc. 74-2, p. 8 @ 178-79]  This document shows "tests conducted by Lonnie Roesel, Circle Welding

Innovations." [Doc. 74-7, p. 1; Doc. 74-9, p. 2] Palacios testified that he did not ask Roesel to certify this particular document, or whether it was all right to use Roesel's name on it; Palacios had not spoken to Roesel in years. [Doc. 74-2, pp. 9-10 @ 204-05] Palacios further testified, however, that he believed it was all right for him to create this document with Roesel's name on it because they only needed to have it on file once, they had not changed their welding, and Palacios did not think Roesel would object because Roesel had installed the equipment. [Doc. 74-2, p. 10 @ 205] Five Star disputes the allegation that there was a "fabrication," implying fraud and alleges that the document "was exactly how the manufacturer, Mr. Roesel, instructed Five Star personnel to use their new machine." [Doc. 86, p. 12] Five Star alleges that Roesel taught Five Star personnel how to use the machine and said it was unnecessary for him to return every time there was a new welder; Roesel trained a Five Star welder originally, Five Star trained each new welder, and since Five Star uses the same process their procedure had not changed and the PQR remained valid, and the standards allow the contractor to conduct qualification and testing. [Doc. 86, p. 12; Doc. 86-5, pp. 6-7; Doc. 74-10, p. 5 (QW-201)] Although Roesel did not give Five Star permission to use his name on the particular documents submitted to Constructors, Five Star alleges that Roesel would have given permission if asked and Roesel testified that he would have told Five Star that there was nothing wrong with the forms; Roesel did not do the tests, however. [Doc. 86, pp. 13, 4-5; Doc. 86-1, pp. 5-6 @ 16-17, p. 15 @ 53, p. 17 @ 62]

Defendants allege that Roesel did not conduct the tests the Procedure Qualification Record indicated he had performed, and did not supervise any testing performed by Santiago Ramirez of Five Star, the welder identified on that Record. UMF # 16-17.

Defendants allege that Five Star did not comply with standards of the National Fire Protection Association ("NFPA"), because Five Star did not have three required documents in place prior to any welding (a Welding Procedure Specification, a Procedure Qualification Record, and a Welder Performance Qualification). In support, Defendants cite the Palacios Deposition, at 172-73, and NFPA13 6.5.2.5.2. Five Star disputes that allegation, alleging that having these documents in place before any welding is not required by NFPA standards, citing NFPA 13 6.5.2.5.2. [Doc. 74-10, p. 4] The evidence cited by Defendants for UMF # 3 does not support their allegation. Palacios's Deposition states that NFPA standard requires a welding procedure specification, that the welding procedure specification be qualified, and that the welder be qualified—not that documents on these requirements be in place before any welding. [Doc. 74-2, pp. 6-7 @172-173] NFPA13 6.5.2.5.2 does not state that documents be in place before any welding is performed. [Doc. 74-10, p. 4] Defendants' UMF # 3 is not supported by the evidence cited by Defendants.

This brief review of factual allegations does not show that Defendants have demonstrated that there are no genuine disputes on material facts. The Court concludes, however, that it is unnecessary to further address the factual issues, based on its conclusion below that Defendants fail to show that they would be entitled to judgment on the law, even if all of their factual allegations were accepted.

## II.  Unlawful Acts Doctrine

To support their argument that they are entitled to judgment as a matter of law under the Unlawful Acts Doctrine, Defendants cite two New Mexico cases: *Desmet v. Sublett*, 1950-NMSC-057, 225 P.2d 141, and *PC Carter Co. v. Miller*, 2011-NMCA-052, 253 P.3d 950.

In *Desmet*, the New Mexico Supreme Court applied what will be referred to here as the Unlawful Acts Doctrine, stating:  "It is a well settled rule of law that a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party, or where he must base his cause of action, in whole or in a part, on a violation by himself of the criminal or penal laws."  *Desmet*, 1950-NMSC-057, ¶ 9, 225 P.2d at 142.   The plaintiff in *Desmet* brought a suit for replevin, seeking return of his truck from the defendant's garage, where it was repaired; the defendant had refused to return the truck until the plaintiff paid not only his own repair bill but also the repair bill of the previous owner of the truck.  *Id.* ¶ 2, 225 P.2d at 141.  The New Mexico Supreme Court affirmed the judgment awarding possession of the truck to the plaintiff, but reversed the award of damages because the plaintiff based his claim for damages on loss of use of the truck—which use would have been in violation of licensing laws.  *Id.* ¶¶ 8-16, 225 P.2d at 142-43.  The license plate on the truck was issued for a different truck, and for a previous year.  *Id.* ¶ 8, 225 P.2d at 142.

"'A person does not become an outlaw and lose all rights by doing an illegal act.'"  *Kapson v. Kubath*, 165 F. Supp. 542, 551 (W.D. Mich. 1958) (quoting *Cook v. Ball*, 144 F.2d 423, 435 (7th Cir. 1944)) (rejecting argument based on *Desmet* that plaintiff could not recover for damages to property incidentally connected with illegal gambling operation).  *Desmet* demonstrates this critical point.  The Unlawful Acts Doctrine does not preclude any cause of action when a plaintiff has done something wrong; the plaintiff in *Desmet* was allowed to bring a replevin action, and was allowed to win a judgment returning possession of the truck to him in that action.  The New Mexico Supreme Court's application of the Unlawful Acts Doctrine was limited to that portion of the lawsuit in which the plaintiff squarely based his claim for damages on his own illegal act.  There must be direct and necessary reliance on the illegal act for the

Doctrine to apply:  "In this case the plaintiff <u>founds his claim</u> for damages on the fact that he was not allowed to operate his truck on the public highways of this state in violation of its positive law."  *Desmet*, 1950-NMSC-053, ¶ 12, 225 P.2d at 142 (emphasis added); *see White v. Shawnee Milling Co.*, 221 P. 1029, 1029-31 (Okla. 1923) (cited with approval in *Desmet*, and denying recovery to plaintiff for damages caused by an illegal act in which defendant was joint transgressor); *Boylston Bottling Co. v. O'Neill*, 121 N.E. 411, 411-12 (Mass. 1919) (cited with approval in *Desmet*, and refusing recovery against principal and surety on a bond guaranteeing performance of an illegal contract to deliver intoxicating liquors, and stating, "It is established that a party to an illegal contract will be left by the law where the law finds him").

The New Mexico Court of Appeals recently explained *Desmet* by stating that a plaintiff may be able to proceed with a lawsuit, and may be able to recover damages, even though the plaintiff had committed an unlawful act in connection with the incident.  *Rodriguez v. Williams*, 2015-NMCA-074, ¶¶ 6-8, 355 P.3d 25, 27-28, *cert. denied*, 2015-NMCERT-006, 367 P.3d 850. *Rodriguez* rejected the defendant's claim that because the plaintiff had been unlawfully driving under the influence of alcohol at the time of the accident, the Unlawful Acts Doctrine adopted in *Desmet* precluded the lawsuit.  The common law policy of *Desmet* is that "'[n]o court will lend its aid to a man who [founded] his cause of action upon an immoral or illegal act.'"  *Id*. (quoting *Desmet*, 1950-NMSC-057, ¶ 11, 225 P.2d at 142 (internal quotation marks omitted)).  Although part of the plaintiff's injuries were caused by his own alcohol impairment, the damages that the plaintiff actually recovered were founded solely on the defendant's negligence; the damages recovered had been reduced by the portion caused by the plaintiff's statutory violation of being impaired at the time.  *Id*. ¶ 8, 355 P.3d at 28.  *Rodriguez* held that the partial recovery was allowed under the rule of *Desmet*, because the portion of damages recovered was not "founded

on" the plaintiff's violation.  This incidental, or collateral, statutory violation by the plaintiff did not preclude the lawsuit; damages not founded directly on that violation were recoverable.

New Mexico caselaw as set forth in *Desmet* and explained in *Rodriguez* is in accordance with the doctrine as explained in *Kapson*:  "'An action may be maintained where the illegal or immoral act or transaction to which plaintiff is a party is merely incidentally or collaterally connected with the cause of action, and plaintiff can establish his cause of action without showing or having to rely upon such act or transaction, although the act or transaction may be important as explanatory of other facts in the case.'"  *Kapson*, 165 F. Supp. at 550 (quoting 1 C.J.S. *Actions* § 13, pp. 1000-01 (prior version)).  This statement is taken from the same section of Corpus Juris Secundum cited with approval in *Desmet*, 1950-NMSC-057, ¶ 9, 225 P.2d at 142.

Defendants' reliance on *Desmet* is misplaced when they argue that Five Star is not entitled to bring a lawsuit and Defendants are entitled to summary judgment, if Five Star did something improper or illegal incidentally or collaterally connected with the contract.  Five Star did not become an outlaw barred from all access to the courts, even if Defendants proved their factual allegations under this Motion.  *Desmet* shows that Defendants overextend New Mexico's approach on the Unlawful Acts Doctrine.

The second case on which Defendants rely is *PC Carter Co. v. Miller*, 2011-NMCA-052, 253 P.3d 950.  In *Miller*, a real estate agent brought an action seeking a commission on a sale of real estate; the plaintiff did not have a New Mexico broker's license.  A New Mexico statute explicitly provided that an unlicensed broker was prohibited from bringing an action for the collection of a commission:

> "No action for the collection of a commission or compensation earned by any person as a qualifying broker or an associate broker required to be licensed under

the provisions of [the Act] shall be maintained in the courts of the state unless such person was a duly licensed qualifying broker or associate broker at the time the alleged cause of action arose."

*Miller*, 2011-NMCA-052, ¶ 12, 253 P.3d at 953 (quoting NMSA 1978, § 61-29-16).  Although this statute barred the plaintiff's breach of contract claims, the plaintiff argued that it could recover on alternate theories of promissory estoppel, breach of fiduciary duty, and unjust enrichment.  *Id*. ¶ 25, 253 P.3d at 956.  *Miller* held, however, that the plaintiff's action was barred because his claim was still based on unlicensed and unlawful activities; the court cited *Desmet* for the principle that a plaintiff cannot maintain a cause of action if, to establish his cause of action he must rely on his illegal or immoral act.  *Id*. ¶ 26, 253 P.3d at 956 (also holding that a contrary decision would nullify statutory provisions); *see Martinez v. Research Park, Inc.*, 1965-NMSC-146, ¶ 14, 410 P.2d 200, 204 (explaining that unlicensed contractor cannot recover because statute makes illegal the construction contract on which contractor must rely), *overruled on other grounds by Lakeview Invs., Inc. v. Alamogordo Lake Village, Inc.*, 1974-NMSC-027, 520 P.2d 1096 (overruled to extent *Martinez* states license required at time contract is executed).

*Miller* relied on an earlier decision denying recovery for unlicensed brokerage services under a theory of quantum meruit, on the ground that the plaintiff had to rely on his unlicensed activities, which were unlawful under the statute and subject to criminal and civil penalties. *Bank of New Mexico v. Freedom Homes, Inc.*, 1980-NMCA-064, ¶¶ 10-16, 612 P.2d 1343, 1345. The court in *Freedom Homes* cited *Desmet* and held that an unlicensed real estate salesperson could not recover commissions or compensation, because to recover he necessarily relied on his unlicensed and unlawful activities.  *Id*. ¶¶ 14, 16, 612 P.2d at 1345.  The opinion further indicated that the statute prohibited an action for compensation, and the court interpreted the plaintiff's quantum meruit claim as a claim for compensation.  *Id*. ¶ 15, 612 P.2d at 1345.

*Miller* and *Freedom Homes* are distinguished from Five Star's case. In *Miller* and *Freedom Homes*, statutes provided not only that it was unlawful for a person to act as a broker without a license, but explicitly provided that no action for collection could be maintained unless the person was properly licensed. These decisions are therefore based both on the statutory provisions and on the Unlawful Acts Doctrine. *Miller*, 2011-NMCA-052, ¶ 26, 253 P.3d at 956; *Freedom Homes*, 1980-NMCA-064, ¶¶ 13, 15, 612 P.2d at 1345; *see also Martinez*, 1965-NMSC-146, ¶¶ 7, 12-14, 410 P.2d at 203-04 (holding both under *Desmet* and express statutory provision prohibiting lawsuit that unlicensed construction contractor could not recover. These cases do not provide strong support for Defendants' argument, because they are also based on statutes expressly prohibiting maintenance of a cause of action.

The Court finds the circumstances of *Measday* illustrate the proper application of the Unlawful Acts Doctrine to Five Star's cause of action. In *Measday*, a licensed plumber sued for the unpaid balance on work performed; the defendant contended that the contract could not be performed because the plaintiff violated a statute providing that a permit must be applied for before certain plumbing work was done. *Measday v. Sweazea*, 1968-NMCA-008, ¶¶ 4-8, 438 P.2d 525, 527. The New Mexico Court of Appeals first held that the statutory violation did not make the contract illegal; the plaintiff was a licensed plumber. *Id*. ¶¶ 9-11, 438 P.2d at 527. The Court of Appeals next rejected the defendant's argument under *Desmet* that the plaintiff could not recover when he must base his claim, in whole or in part, on a violation of criminal or penal laws. Observing that in *Desmet* the damages claim for loss of use of the truck was based squarely on a statutory violation, the *Measday* court held that *Desmet* was not applicable. The plaintiff's claim was not based on the failure to obtain a permit; the claim was for labor performed and materials furnished in repairing plumbing, and did not require the plaintiff to

prove the statutory violation. *Id*. ¶¶ 18-19, 438 P.2d at 528. In holding that the plaintiff's claim would not be dismissed, *Measday* relied on a case holding: "'If the contract as made could have been performed in a legal manner, the courts will not declare it void and unenforceable because it may have been performed in an unlawful manner.'" *Id*. ¶ 19, 438 P.2d at 528 (quoting *Comeaux v. Mann*, 244 S.W.2d 274, 277 (Tex. Civ. App. 1951)). *Measday* held that the plaintiff's statutory violation did not prevent enforcement of the contract. *Id*. 22, 438 P.2d at 528.

In *Fleming*, the New Mexico Court of Appeals observed the critical distinction between *Measday* and cases in which the Unlawful Acts Doctrine bars recovery. In *Fleming*, an unlicensed contractor had to rely on an alleged contract executed in violation of statutes in order to recover for breach of that contract. *Fleming v. Phelps-Dodge Corp.*, 1972-NMCA-060, ¶¶ 19-20, 496 P.2d 1111, 1113-14. *Fleming* distinguished this situation from *Measday*, in which the plaintiff could recover on his contract because the statutory violation did not make the contract itself illegal. *Fleming*, 1972-NMCA-060, ¶ 19, 496 P.2d at 1113-14.

Another case making the same distinction is *Sierra Blanca Sales Co. v. Newco Industries, Inc.*, 1972-NMCA- 153, ¶¶ 54-62, 505 P.2d 867, 878-79. Again relying on and applying the distinction made in *Measday*, the New Mexico Court of Appeals held that a possible statutory violation for failure to obtain approval of an employment contract by the Racing Commission did not make that contract unenforceable; the Court of Appeals thus reversed summary judgment for a defendant on that basis. *Id*. To enforce the contract against that defendant, the plaintiff did not rely on and was not required to prove that the contract was not submitted to the Racing Commission for approval; the rule of *Desmet* was inapplicable and the rule of *Measday* applied. *Id*. ¶¶ 59-62, 505 P.2d at 879.

14

Five Star argues that Defendants' authority is distinguishable, involving plaintiffs who sought recovery for activities conducted without the required licensure. Despite this argument, Defendants' Reply merely cites the same two cases, *Desmet* and *Miller*. [Doc. 89, p. 13]

Based on all of this caselaw, the Court concludes that New Mexico's Unlawful Acts Doctrine does not preclude Five Star's claims. Defendants claim that Five Star could not perform the work unless it complied with applicable standards. But even if Five Star were shown to have committed fraud and violated standards as alleged by Defendants, any such wrongful or illegal conduct was incidental or collateral; Five Star is not required to prove compliance with NFPA standards or proper documentation in order to prove its claims. Five Star's claims are not founded on any illegal conduct by Five Star. *Desmet* is distinguished on the critical point, and *Measday* is applicable. The contract itself was not void or unenforceable, and, as in *Measday*, "the contract as made could have been performed in a legal manner." *Measday*, 1968-NMCA-008, ¶ 19, 438 P.2d at 528. Five Star is not attempting to recover based on its own wrongful, immoral, or illegal conduct.

Defendants criticize Five Star for claiming, without citation to authority, that the Unlawful Acts Doctrine is an affirmative defense which was waived when it was not included in Defendants' answer. [Doc. 89, p. 13 n.1] It appears to the Court, however, that Five Star's claims do not require Five Star to prove that all documentation was in order and the contract would have been performed properly; the Court is not persuaded by Defendants' unsupported contrary assertion. Without contrary authority from Defendants, it appears that the Unlawful Acts Doctrine would be an affirmative defense in this case, that Defendants would have the burden on this defense, and that the summary judgment standard therefore requires the Court to view the facts in the light most favorable to Five Star. *Cf. Dugger v. Arredondo*, 408 S.W.3d

825, 836 (Tex. 2013) (stating common law "unlawful acts doctrine" was affirmative defense). More important, it was Defendants' burden to demonstrate, by citation to authority and articulation of argument, that Defendants are entitled to judgment as a matter of law. The Court concludes that Defendants fail to sustain that burden—merely asserting that *Desmet* and *Miller* have application beyond their circumstances without demonstrating that New Mexico courts apply the doctrine more broadly than the facts of *Desmet* and *Miller* show.

Based on the Court's decision on the Unlawful Acts Doctrine, as discussed above, the Court finds it unnecessary to reach the additional issues raised in Five Star's Objections to Defendants' Additional Summary Judgment Evidence [Doc. 91], and in the additional response and reply followed [Docs. 92, 93].

## CONCLUSION

The Court concludes that Defendants fail to carry their burden to show that they are entitled to judgment as a matter of law. The Unlawful Acts Doctrine of *Desmet* is inapplicable because Five Star is not attempting to recover based on proof of its own wrongful or unlawful conduct.

**IT IS THEREFORE ORDERED** that:

*Defendants' Motion for Summary Judgment Based on the Unlawful Acts Doctrine* [Doc. 74] is **DENIED**.

*Plaintiff's Objections to Defendants' Additional Summary Judgment Evidence* [Doc. 91] are **OVERRULED** and **DENIED** as moot.

_____
**UNITED STATES DISTRICT JUDGE**

16